# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TERRENCE J. HANCOCK, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 11 C 1428 |
| KOPLOS EXCAVATING, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross-motions for summary judgment. For the reasons stated below, Plaintiffs' motion for summary judgment is granted and Defendants' motion for summary judgment is denied.

## BACKGROUND

Plaintiffs are trustees of a multi-employer pension plan (Plan). Defendant Koplos Excavating, Inc. (Company) was allegedly an employer obligated to make contributions to the Plan's trust fund (Fund), and Defendant Nicholas J. Koplos (Koplos) was allegedly President and sole shareholder of Company. Plaintiffs allege that on or around March 31, 2006, Company ceased operations and withdrew from the Plan.

1

In 2009 and 2010, through the sale of real estate that was owned by Company, all of Company's assets were allegedly transferred to Koplos. Company allegedly did not receive similarly valuable assets from Koplos in return. In November of 2010, Fund allegedly notified Company by letter that Company owed $81,426.00 in withdrawal liability to Fund. Fund also provided Company a payment plan and informed Company of its right to review the withdrawal liability determination.

In December 2010, Fund allegedly notified Company by letter that if Company did not remit payment towards its withdrawal liability within sixty days, Company would be in default and would immediately be liable for the entire amount of withdrawal liability. Company allegedly never requested review of the withdrawal liability determination or initiated arbitration relating to the withdrawal liability consistent with 29 U.S.C. § 1401(a) (Section 1401(a)). Company allegedly has not made any payment toward the withdrawal liability.

Plaintiffs include in their first amended complaint a claim against Company brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1001 *et seq.* (Count I), a claim against Koplos for a constructive trust based on the trust fund doctrine (Count II), and pled in alternative to Count II, a state law claim against Koplos alleging a violation of the Illinois Uniform Fraudulent Transfers Act (IUFTA), 740 ILCS 160/1 *et seq.* (Count III). The parties now move for summary judgment on all claims.

# LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**DISCUSSION**

I.  Count I

Plaintiffs argue that summary judgment should be granted in their favor on Count I.  Pursuant to Section 1401(a), "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of [the MPPAA] shall be resolved through arbitration." 29 U.S.C. §1401(a).  Thus, to succeed on their claim for withdrawal liability against Company, Plaintiffs "must show that: (1) [ ] Fund was a multiemployer pension plan and [Company] w[as] an employer for the purposes of ERISA, (2) [ ] Fund notified the Defendants of their assessed liability, and (3) [Company] failed to timely initiate arbitration."  *Chicago Truck Drivers v. El Paso CGP Co.*, 525 F.3d 591, 597-98 (7th Cir. 2008)(citation omitted)(internal quotation omitted).

Although Defendants deny certain of Plaintiffs' statements of material fact, they do so by making legal arguments and without any citations to the record, both contrary to the requirements in Local Rule 56.1.  *See* N.D. Ill. R. 56.1(b)(3)(B) (requiring the party opposing summary judgment to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon").  If "a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."  *Cracco v. Vitran Exp.,*

*Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Thus, pursuant to Local Rule 56.1, the court deems all of the facts set forth by Plaintiffs in their statement of material facts to be undisputed.

The undisputed record shows that the Fund was a multiemployer pension plan and that Company was an employer for the purposes of ERISA. (R PSF Par. 1, 3-4). The undisputed record also shows that in 2006, Company withdrew from the Fund, (R PSF Par. 5-6), and that in a letter dated November 8, 2010 (November 2010 Letter), Fund notified Company that the amount of withdrawal liability owed by Company was $81,426.00. (R PSF Par. 7). The November 2010 Letter to Company indicated that Company could either pay its withdrawal liability in one lump sum, or in sixteen quarterly installments of $5,496.00, beginning December 20, 2010, and a final quarterly installment of $3,053.00. (R PSF Par. 8). The November 2010 Letter also advised Company of its right to request review of Funds' determination regarding the withdrawal liability and advised Company that if it failed to remit payment, Company would be in default. (R PSF Par. 9-10). Company admits that it timely received the November 2010 Letter. (R PSF Par. 11).

In addition, it is undisputed that after the Company failed to make any payment to Fund by the December 20, 2010 deadline, Fund sent a letter to Company dated December 22, 2010 (December 2010 Letter), demanding payment of the past due amount and indicating that if Company did not make such payment within sixty days of receiving the December 2010 Letter, Company would be in default, thereby making Company immediately liable for the full amount of withdrawal liability

owed. (R PSF Par. 12-13). Company admits that it timely received the December 2010 Letter, that it did not submit any written request to Fund for a review of the withdrawal liability determination, and that Company never initiated arbitration relating to the withdrawal liability determination. (R PSF Par. 14-16). Company also admits that it has not made any payments for withdrawal liability to Fund. (R PSF Par. 17).

Defendants argue that no withdrawal liability is due because Plaintiffs failed to give notice to Company regarding its withdrawal liability "as soon as practicable," as required under 29 U.S.C. § 1399(b) (Section 1399(b)). Defendants also highlight the fact that Fund's notice and demand for payment of withdrawal liability was not made until after Defendants had already lost the opportunity to amend their income tax returns for the relevant year. (DSJ Memo 2-3, 5). Defendants are correct that pursuant to Section 1399(b), a plaintiff's notification and demand for payment of withdrawal liability must be made "[a]s soon as practicable after an employer's complete or partial withdrawal." 29 U.S.C. § 1399(b). However, having failed to raise their timeliness arguments in an arbitration proceeding consistent with the requirements of Section 1401(a), Defendants have waived all arguments relating to the timeliness of Fund's notice to Company regarding its withdrawal liability. *See El Paso CGP*, 525 F.3d at 595 (stating that "[i]f the employer wishes to dispute a plan sponsor's assessment of withdrawal liability, it must arbitrate the issue"); *see also Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988)(emphasizing that "[c]ourts interpreting § 1401(a)(1) have been consistent in

their conclusions," and that "[*a*]*ny* dispute over withdrawal liability as determined under the enumerated statutory provisions *shall* be arbitrated")(emphasis in original); *Hancock v. Cook County Waste & Recycling, Inc.*, 2010 WL 1416978, at *9 (N.D. Ill. 2010)(stating that "any defense to withdrawal liability must be raised through arbitration," and that "[o]therwise, the party waives those defenses") (citations omitted); *Central States v. King Dodge, Inc.*, 2010 WL 2990117, at *2 (N.D. Ill. 2010)(stating that "failure to initiate arbitration dooms any defense 'that would challenge the fact or amount of withdrawal liability'")(citation omitted). Defendants' deadline for initiating arbitration has long since passed, *see* 29 U.S.C. §1401(a)(1), and Defendants have admitted that they never initiated arbitration relating to the withdrawal liability determination. (R PSF Par. 14-16).

Defendants argue that there are exceptions to the rule requiring arbitration of all disputes concerning withdrawal liability. However, "[e]xceptions to the arbitration requirement are made only in the rarest cases." *Id*. (citing *Central States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1373 (7th Cir. 1992), which announced the limited exception that "the issue of membership in a controlled group cannot be within *exclusive* arbitral jurisdiction")(emphasis in original). Defendants have not pointed to any case law suggesting that the issue of timeliness under Section 1399(b) falls under the extremely limited exceptions to the mandatory arbitration requirements of Section 1401. Further, case law indicates that the issue of timely notice to an employer regarding withdrawal liability must be arbitrated or is otherwise waived. *See Bay Area Laundry and Dry Cleaning Pension Trust Fund v.*

7

*Ferbar Corp. of California, Inc.*, 522 U.S. 192, 205 (1997)(stating that "if an employer believes the trustees have failed to comply with their 'as soon as practicable' responsibility, the employer may assert that violation as a laches objection at an arbitration contesting the withdrawal liability assessment"); *PACE Industry Union-Management Pension Fund v. Troy Rubber Engraving Co.*, 805 F.Supp.2d 451, 463-67 (M.D. Tenn. 2011)(holding that "defenses as to whether the notice of liability was provided 'as soon as practicable' and the doctrine of laches ha[d] been waived by the failure to initiate arbitration properly")(collecting cases). Defendants admit they never initiated arbitration with respect to the withdrawal liability. Therefore, Defendants' arguments relating to the timeliness of Fund's notice to Company are waived.

Defendants also argue that Fund has not provided adequate evidence of the amount of withdrawal liability due. (D Resp. 8). In support of their argument, Defendants suggest that in order to establish the amount of withdrawal liability due, Plaintiffs must provide an affidavit from the plan actuaries who calculated the amount of withdrawal liability owed. (D Resp. 8). However, Defendants have provided no case law in support of such a proposition. Further, since Defendants never initiated arbitration, Defendants have waived the right to challenge the amount of withdrawal liability due. *El Paso CGP*, 525 F.3d at 595 (citing 29 U.S.C. § 1401(a)(1)); *see also* 29 U.S.C. § 1401(b) (stating that "[i]f no arbitration proceeding has been initiated pursuant to [29 U.S.C. § 1401(a)], the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan

sponsor"). In addition, the undisputed record reflects that the Fund's actuaries determined the amount of withdrawal liability to be $81,426.00. (D RSF Par. 7); (Clarkson Dep. 55-56). Therefore, Defendants' argument relating to the sufficiency of evidence regarding the amount of withdrawal liability due is without merit.

Defendants further argue that summary judgment is not appropriate on the issue of damages because the amounts owed continue to change. (D Resp. 8). Pursuant to 29 U.S.C. § 1132(g)(2), the court is required to award interest, liquidated damages, and reasonable attorneys' fees and costs to Fund. *Slotsky*, 956 F.2d at 1377. In addition, the undisputed record shows that pursuant to the governing plan documents, Fund is entitled to recover withdrawal liability, interest, liquidated damages, and attorneys' fees and costs in this action. (R PSF Par. 18, 24). Based on the undisputed record, interest on the withdrawal liability amount of $81,426.00 is calculated at a rate of 3.25% from December 20, 2010 to the date of judgment. (R PSF Par. 19-21). In addition, based on the undisputed record, liquidated damages in this case amount to $16,285.20. (R PSF Par. 22-23).

Although Defendants are correct that certain amounts, such as those for interest and attorneys' fees and costs, continue to accrue, such amounts will be readily ascertainable upon entry of summary judgment in this case. Therefore, Defendants' argument that summary judgment is not appropriate with respect to damages is without merit. Based on the above, Plaintiffs' motion for summary judgment is granted with respect to Count I, and Defendants' motion for summary judgment is denied with respect to Count I.

II. Count II

Plaintiffs argue that summary judgment should be granted in their favor with respect to Count II. Pursuant to the trust fund doctrine, Plaintiffs seek in Count II the imposition of a constructive trust on certain of Company's assets that were transferred to Koplos. Courts adjudicating withdrawal liability cases have recognized the trust fund doctrine as a mechanism to hold the sole shareholder of a corporation liable for a corporation's withdrawal liability. *See Central States, Southeast and Southwest Areas Pension Fund v. Minneapolis Van & Warehouse Co.*, 764 F.Supp. 1289, 1294 (N.D. Ill. 1991)(explaining that "stockholders are remaindermen-[meaning] their interest is only in the equity, only in what is left over after *all* the corporate obligations have been paid," and recognizing as a "basic tenet of corporate law" that "[w]hen the assets of a corporation are distributed to its shareholders leaving corporate debts unpaid, liability of the shareholders to a creditor, to the extent of the value of the assets received is beyond question"); *see also Central States, Southeast and Southwest Areas Pension Fund v. LaCasse*, 254 F.Supp.2d 1069, 1071-72 (N.D. Ill. 2003)(finding that "common law fraudulent transfer claims are permissible in cases of unpaid ERISA withdrawal liability")(citations omitted); *see also, e.g., Central States, Southeast and Southwest Areas Pension Fund v. King Auto Financing, Inc.*, 2012 WL 4364310, at *4 (N.D. Ill. 2012). Withdrawal liability arises as soon as an employer withdraws from a plan. *See Minneapolis Van*, 764 F.Supp. at 1296 (N.D.Ill. 1991)(stating that, even if unasserted, "liability for withdrawal payments ar[i]se[s] as a matter of law at the

moment [a] the corporation . . . effect[s] a 'complete withdrawal'")(citation omitted); *see also Central States, Southeast and Southwest Areas Pension Fund v. Bomar Nat., Inc.*, 253 F.3d 1011, 1015 (7th Cir. 2001)(indicating that withdrawal liability arises once a withdrawal has occurred). Even when a shareholder has no knowledge concerning the existence of the withdrawal liability, a shareholder who receives fraudulently transferred assets may be found personally liable for the withdrawal liability and a constructive trust may be imposed. *See Minneapolis Van*, 764 F.Supp. at 1294-95 (imposing a constructive trust after explaining that "[d]istribution alone, and *not* an affirmative intent to defraud, establishes *this* type of 'fraud on the creditor,'" and emphasizing that "there is no requirement of knowledge as a precondition for imposition of liability")(emphasis in original).

The undisputed record reflects that Company's withdrawal liability arose in 2006. (R PSF Par. 4-6). The undisputed record also reflects that in connection with two real estate transactions that occurred in 2009 and 2010, Company paid Koplos, its sole shareholder, a total of $253,592.55 in dividends. (R PSF Par. 25, 30-33, 39-41). Plaintiffs have pointed to undisputed evidence indicating that Koplos did not provide anything of value to Company in exchange for the dividends he was paid, (R PSF Par. 34-36, 42), and Defendants have not pointed to any evidence showing otherwise. Instead, Defendants argue that solely by virtue of being a shareholder, Koplos provided something of value to Company in exchange for the dividends he received. However, Defendants have provided no law to support their argument. Regardless, as discussed above, dividends may not be paid to a shareholder until all

11

of a company's debts have been satisfied, and under the trust fund doctrine, a creditor may recover from a shareholder when assets of a company are improperly transferred to the shareholder. *Minneapolis Van*, 764 F.Supp. at 1294-95.

      Defendants also argue that ERISA does not allow Koplos to be held jointly and severally liable on Count II. However, the case cited by Defendants in support of their argument, *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), is not on point, and in fact, cases that have been decided since *Mertens* provide that joint and severally liability may be imposed in a withdrawal liability case. *See, e.g., LaCasse*, 254 F.Supp.2d at 1071-72. Based on the above, Plaintiffs' motion for summary judgment is granted with respect to Count II, and Defendants' motion for summary judgment is denied with respect to Count II. Since the court has ruled in Plaintiffs' favor with respect to Count II, the court need not address Koplos' liability under Count III.

## CONCLUSION

Based on the foregoing analysis, Plaintiffs' motion for summary judgment is granted and Defendants' motion for summary judgment is denied. Judgment is entered against Company and Koplos, jointly and severally, the amount of $97,711.20, which represents withdrawal liability in the amount of $81,426.00 and liquidated damages in the amount of $16,285.20, plus pre-judgment interest that accrued from December 20, 2010, through the date of judgment, and reasonable attorneys' fees and costs. As to pre-judgment interest and attorneys' fees and costs, Plaintiffs are given until August 1, 2013, to provide to the court their requested amounts. Defendants are given until August 15, 2013, to respond. Noticed status date of July 23, 2013 is hereby stricken. Next status is set for August 30, 2013 at 9:00 a.m.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 23, 2013